COMPUTING SCALE CO. v. KEYSTONE STORE-SERVICE CO.

(Circuit Court, W. D. Pennsylvania. June 7, 1898.)

1. PATENTS—CONSTRUCTION OF CLAIMS.
 When a claim, read in its common, ordinary meaning, is explicit and clear,—when there is no apparent uncertainty,—there is no room for construction, or for expert evidence as to the meaning of the claim.

2. SAME—WEIGHING AND PRICE SCALE.
 The Pitrat patent, No. 385,005, for a weighing and price scale, construed, and held not infringed as to claim 12.

3. SAME—COMPUTING SCALE.
 The Culmer patent, No. 486,663, for a computing scale, construed, and held not infringed as to claim 1.

Church & Church, for complainant.
John R. Bennett and H. H. Bliss, for respondent.

BUFFINGTON, District Judge.    By this bill the Computing Scale Company charges the Keystone Store-Service Company with the infringement of claim 12 of patent No. 385,005, issued June 26, 1888, to J. E. Pitrat, for a weighing and price scale, and of claim 1 of patent No. 486,663, issued November 22, 1892, to J. W. Culmer, for a computing scale.    Bearing in mind the statutory requirement that the patentee "shall particularly point out and distinctly claim the part, improvement or combination which he claims as his invention or discovery" (Rev. St. § 4888), we turn to the patent of Pitrat to ascertain from such patent itself what invention was made and claimed.    If we are able to ascertain those facts from that instrument, we have no need to go further; for when a claim, read in its common, ordinary meaning, is explicit and clear,—when there is no apparent uncertainty,—there is no room for construction.    Rich v. Close, 4 Fish. Pat. Cas. 279, Fed. Cas. No. 11,757; United States Glass Co. v. Atlas Glass Co., 88 Fed. 493.

The patent refers to combination weighing and price scales, which in themselves were not new in the art, and Pitrat's invention was for improvements.    Without going into the details of Pitrat's suggested improvements or a description of scales of that general type, it is sufficient to say that Pitrat showed two specific forms, alike in general features, but differing in details.    In both the indicating beams were pivoted on a frame adapted to shift its position with reference to the body of the scales.    The medium of interrelation was a connecting rod, which, with the scale proper, retained a stationary position.    Consequently the movement of the scale-beam frame changed the leverage point of the platform weight upon the scale beam, and so necessitated a change in position of the weight or weights upon such scale beams to secure an equipoise.    This scale-

beam shifting was required by the fact that, in price and weight scales, we have the two units of calculation, viz. price and weight. By an ingenious system of gradations on different portions of the scale beam and the use of an additional poise,—things not original with Pitrat,—means are afforded of figuring the net amount of diverse weights at diverse prices. Computation at the lowest desired price per pound was impossible in one form of device suggested by Pitrat. The position of the pivotal supports upon which the scale beam balanced was such that the head block could not reach the center of the beam. To overcome this mechanical objection, Pitrat suggested another form of construction. In it the pivotal support was bow shaped, the open side being towards the head block. "The pivotal support, O," says the specification, "is bow shaped, thereby allowing the head block to reach the center of the beam or come in line with the pivotal supports, which permits computation to be made at the lowest desired rate per pound,—a thing not attainable by the construction first described." It will be noted that the foregoing extract contains the only reference in the patent to alignment, and that the alignment there spoken of is not a fixed and unchangeable one, but one resulting from a change in the relative position of parts. An examination shows that in the twelfth claim we find that which in apt words embodies the invention disclosed as above stated in the specification. That claim is for "the combination with the price beam, having its left branch slotted, of the head block, having the rod, e, pivotally connected therewith, and mounted in said slot, whereby the pivotal supports of the beam and rod, e, may be brought into alignment, as and for the purpose described."

Fig. 2

The patent issued being then in itself self-sufficient and explanatory, what need is there of a resort to extrinsic evidence to ascertain

Such being the case, the specification particularly pointing out an invention to which the claim, and every element thereof, is presumably referable, there being no other invention particularly pointed out to which the claim can refer, we are justified in concluding that the disclosure of the specification and the subject-matter of the claim are the same, and together constitute a compliance with the statutory mandate that the patentee "shall particularly point out and distinctly claim the part, improvement or combination which he claims as his invention or discovery."

The patent issued being then in itself self-sufficient and explanatory, what need is there of a resort to extrinsic evidence to ascertain

its meaning? In a late case, that of United States Glass Co. v. Atlas Glass Co., 88 Fed. 493, this court had occasion to say what we regard as especially pertinent to this patent. In substance we there said, if the meaning is clear, construction is not to be resorted to to create doubt, and then a liberal construction given to the doubt, which results in presenting to a patentee, not what he claimed, but what he failed to claim. Such liberality is not construction, but reconstruction; for a court discharges its duty and exhausts its power when it ascertains and declares what was claimed, and it as clearly transcends its power when it reconstructs a claim to cover what a patentee did not, but might have, claimed, had he been gifted with prescience.

At variance, we think, with these safe and wholesome canons of interpretation, an effort is here made to say that this reasonable, just, and statutory ascertainment of the meaning of the claim from the four corners of the patent itself should not be followed, and that the true meaning of the claim is found in the testimony of expert witnesses called by the complainant. Assuming a resort to that source pertinent, we think their views should not prevail. It is claimed the alignment of the twelfth claim means, not a transverse alignment into which the aligning elements are brought, and which, therefore, may or may not exist, but the horizontal alignment which the three pivotal points of head block, beam, and forward poise drop bear to each other. An analysis of this position exhibits the following: There is no mention in the claim of a third point in connection with alignment. The alignment therein referred to is of two points only, viz. the pivotal supports of the beam and that of the rod, E. Moreover, the claim contemplates a device wherein these two points may be brought into alignment. This language primarily means, and clearly implies, that they may be out of alignment, but that the construction is such that they may be brought, i. e. shifted, "into alignment, as and for the purpose described." What this alignment, "as and for the purpose described," was, had been explicitly set forth before in the specification, namely, "allowing the head block to reach the center of the beam or come in line with the pivotal supports, which permits computation to be made at the lowest desired rate per pound,—a thing not attainable by the construction first described." The claim is not alone for a price beam having its left branch slotted, and of a head block having the rod, E, pivotally connected therewith and mounted in said slot, but it is of those elements so constructed that "the pivotal supports of the beam and rod, E, may be brought into alignment, as and for the purpose described." The insertion of these words meant something, and they must be given due weight. The construction we adopt accords them meaning; that of the complainant ignores their presence, and makes nonessential what the patentee and the office have deemed material and essential. To us it is clear that the construction which we thus reach from the four corners of the writing is the natural, logical, and true one, and awards to the patentee all he disclosed and claimed in that regard. It is

conceded the respondent's device does not infringe the claim when, thus construed.

We now turn to the Culmer patent, the first claim of which is al·leged to be infringed. In a scale of complainant's type of make, combining both a weighing and computing beam, it is obvious that the arc described by the weighing beam is fixed, while that described by the computing beam varies, as that beam is moved forward or backward within the link. These beams having but a single connection with the platform, it is manifest that, to avoid binding or friction, compensation must be made for this arc-variation. This the patentee secured by placing a joint or flexible connection between the two beams. In the play allowed by this connection the difficulty was overcome. Two styles of joint were shown, the specific form of which it is not necessary to detail. The patentee contemplated their use in a combination scale, such as complainant makes; that is, where the beam was mounted on a carriage adapted to be moved longitudinally on the frame of the scales. In that regard the specification says:

"As my invention consists, essentially, of the above-described flexible connection for the beams, the computing beam, and the mounting of such beam upon a carriage longitudinally movable on a cap in relation to the weighing beam, it is obvious that these parts and combinations of parts may, if desirable, be added to the ordinary scale now in use."

Upon this device was granted the claim in issue, viz.:

"The combination, with the computing beam and the weight beam, of a rod connecting said beams, having a flexible joint between such connections. whereby said rod will adapt itself to the variations in the vibrations of the said beams in the efficient working of the scale, substantially as described."

In this claim there are three elements, viz. the computing beam, the weight beam, and rod connecting the two. This rod has the limitation of a flexible joint of such functional power that the rod will adapt itself to the variations in the vibrations of the two beams.

Assuming this device was novel and patentable, does the respondent's device infringe? We think not. The device in question was certainly not of a broad, general type. It covers simply the combination disclosed, or one embodying substantial equivalents of its elements. Without describing the entire apparatus, we find in respondent's device that the computing beam occupies a fixed position relative to the platform. Now, inasmuch as there must be a change in point of application of the weight resultant force to the computing scale, it is manifest this connection must be secured by a shifting of the connecting medium or rod. But, inasmuch as the connection between the weight beam and the platform is necessarily fixed, it follows that in this type of scales the computing beam and the weight beam cannot be bound by a connecting rod, and the connected two to the platform by a single rod. The shifting capacity of the weight connecting and conveying medium between the scale beam and the platform of respondent's device is incompatible and nonassimilating with the necessarily nonshifting weight transmitting medium between

the weight beam and the platform. It therefore follows that, to transmit its weight units, the platform must have two separate, individual connections,—one with the weight scale, of a fixed relativity to both; the other with the computing beam, but of shifting or changeable relativity thereto. An analysis of the operation of this scale, it is submitted, shows that in this type the weight units emanate from the platform in two separate, defined, individual paths, respectively, and in such separate paths adjust themselves to the arc of the beam at the end of their path, and this without reflex action on the other path, while in the Culmer device the weight units emanate from the platform by a single path, which, by the intercommunicating flexible joint, is the necessary resultant from the reflexed effects of the varying divergence of the arcs of the connected intercommunicating scale and weight beams. The incipient division of the weight by means of the two separate rods, and the absence of a connecting rod with a flexible joint between the scale and the weight beam, show to our mind a different construction—one involving different principles and means—from Culmer.

While the end sought for in both mechanisms may be the same, yet the means employed are essentially and functionally different. We are therefore of opinion infringement has not been shown, and the bill must be dismissed.