## MACFARREN v. MORGAN.

Court of Appeals of District of Columbia.

Submitted January 13, 1928. Decided March 5, 1928.

No. 2017.

1. Patents ⬲101—Senior party held entitled to priority for "pressure-exerting" device for coal mining, notwithstanding junior party's earlier application covering device to prevent falling of coal on cutter frame.

Senior party *held,* entitled to priority of invention for coal-mining machines described as "pressure-exerting" devices, as against contention that invention was disclosed by junior party's earlier application for device designed to prevent falling of coal on cutter frame.

2. Patents ⬲101—In interference proceeding, claims are given interpretation consistent with specification in which they originate.

In interference proceeding, claims will, if possible, be given an interpretation consistent with specification in which they originate.

3. Patents ⬲101—Attempts to enlarge scope of filed application should be frowned on, especially when intervening invention would be appropriated.

Attempts to enlarge scope of patent application, once filed, should be frowned on, especially when result would be appropriation of an intervening invention.

Appeal from the Commissioner of Patents.

Interference proceeding between Walter W. Macfarren and Edmund C. Morgan. From a decision of the Commissioner of Patents, awarding priority to Morgan as to three of the eight counts in issue, Macfarren appeals. Reversed.

Archworth Martin, of Pittsburgh, Pa., for appellant.

C. M. Nissen and A. J. Crane, both of Chicago, Ill., for appellee.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

MARTIN, Chief Justice. The invention involved in this interference relates to coal-mining machines. The parties are Macfarren and Morgan. Macfarren is the senior party, having filed his application on November 3, 1915; Morgan's application was filed on November 19, 1917. Neither party has taken testimony. Macfarren relies upon his filing date for constructive reduction to practice; while Morgan relies upon an earlier application, filed by him on July 5, 1913, and now copending, as proof of his reduction to practice of the subject-matter as of that date.

There are eight counts in issue. Of these counts 7 and 8 have been awarded to Macfarren without dispute. As to the remaining counts, the Examiner of Interferences awarded priority to Macfarren as to counts 1, 2, and 3, and to Morgan as to counts 4, 5, and 6. Cross-appeals were taken from this decision by the respective parties, whereupon the Examiners in Chief affirmed the Examiner's award to Macfarren as to counts 1, 2, and 3, but reversed the award to Morgan as to counts 4, 5, and 6. The Commissioner of Patents, upon appeal, affirmed the decision of the Examiners in Chief as to counts 1, 2, and 3, but reversed their decision as to counts 4, 5, and 6, and awarded priority to Morgan as to them. Macfarren has appealed to this court from the decision denying him priority as to counts 4, 5, and 6; Morgan has taken no appeal.

Macfarren, as the senior party, is entitled to prevail, unless the invention defined by counts 4, 5, and 6 of the issue is disclosed in Morgan's application filed on July 5, 1913. Whether such a disclosure appears in the application is the controlling question in the case.

Counts 1, 4, and 6 are copied for illustration. The first of these is not directly involved in this appeal, but is illustrative of counts 1, 2, and 3 herein referred to:

"1. In a mining machine, the combination of a frame, a cutting chain carried thereby, and means lying within the boundary formed by the cutting chain and positioned within the kerf cut by said chain, for breaking out the material being mined; said breaking means being operatable independently of the movement of the cutting chain."

"4. In a mining machine, the combination with a plane kerf cutter comprising a cutter frame and an endless traveling chain cutter mounted thereon, of a pressure-exerting device carried by said cutter frame within the boundary of the chain cutter, and comprising relatively telescoping members with a spring inclosed thereby."

"6. In a machine for breaking coal out of the solid, a frame, cutting means carried thereby for forming an opening in the coal to permit of its deflection for breakage, and for also making an opening in the coal adapted to receive a pressure-exerting device, a support held by said frame and projecting directly inward therefrom to have its inner end part directly support the cutting means, and a vertically movable pressure-exerting device also carried by said support and normally stationary thereon and adapted to be

vertically moved relatively thereto on vertical lines which are within the outlines of the path of the cutter and which pass through said support."

The applications involved in this interference plainly describe certain mechanical devices acting in combination with kerf and slot cutters for breaking down coal from the face of the seam after the cutting of two or more related kerfs or slots therein. The kerfs or slots are cut into the coal seam by means of cutter chains moving around a forward-extending frame, which is brought into contact with the coal. Mounted within the plane of the cutter frame, and within the boundaries of the cutter chain, are devices comprising a cylinder and plunger positioned transversely to the plane of the cutter frame, and to which fluid under pressure may be periodically admitted to expel the plunger, and thereby exert pressure to break down the coal. This avoids the necessity of withdrawing the machine and the cutter bar for the purpose of employing other means, such as explosives, in order to break down the coal. The cylinders are always in operative position, and it is only necessary that fluid pressure be admitted to them through a control valve whenever a kerf or slot of sufficient depth has been cut.

[1] It is clear that Morgan's application of July 5, 1913, did not disclose this invention. It made no claim to any device for breaking down the coal after the cutting of the kerfs or slots. It made claim to devices designed to support such blocks of coal as might fall from above the cut, in order to prevent them from settling upon and binding the cutters while in action, describing them as "yielding cushions to prevent the binding of the cutting mechanisms while the cut is being made." This claim, however, did not constitute a disclosure of the invention for breaking down the coal, herein involved. It was upon this conclusion that the Commissioner based his decision against Morgan as to counts 1, 2, and 3. But the Commissioner held that the corresponding devices described in counts 4, 5, and 6, being described simply as "pressure-exerting" devices, without specifying their functions, would read upon Morgan's earlier disclosure, and for this reason the Commissioner awarded priority to Morgan as to these counts.

[2, 3] We think this ruling erroneous. In Hauss v. Merrell, 48 App. D. C. 433, this court held that in an interference proceeding, the claims will if possible be given an interpretation consistent with the specification in which they originate, and also that attempts to enlarge the scope of an application once filed should be frowned upon, especially when the result would be the appropriation of an intervening invention. In our opinion the devices of Morgan's earlier application, being designed merely to prevent the falling of coal upon the cutter frame, are not "pressure-exerting" devices within the sense of the counts, and it appears from the record that it was not until seven years had elapsed after the filing of the earlier application, and after Macfarren had filed his present application, that Morgan made such a claim.

The decision of the Commissioner of Patents, awarding priority to Morgan as to counts 4, 5, and 6, is reversed, and priority as to them is awarded to Macfarren.