McKEE v. NOONAN.

Patent Appeal No. 3705.

Court of Customs and Patent Appeals.
Dec. 21, 1936.

Rehearing Denied Jan. 25, 1937.

Fred Gerlach and Norman H. Gerlach both of Chicago, Ill., for appellant.

Kwis, Hudson & Kent, of Cleveland, Ohio, for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal by Garnet W. McKee from a decision of the Board of Appeals of the United States Patent Office, awarding priority of invention to Thomas F. Noonan, and reversing an award of priority to McKee by the Examiner of Interferences.

The interference involves five counts which were claims of the Noonan patent No. 1,860,263 for a meter bar connection, which claims were inserted into the application for reissue of patent No. 1,838,778 of McKee.

The invention relates to devices for connecting gas meters to service pipes and comprises a crossbar in which sleeves are rotatably mounted, the sleeves having screw-threads at their upper ends for connection to the service pipes, and swivels for connection to the meter and screw-threaded to the sleeves.

Count 1 is illustrative of all the counts and follows:

"Count 1. In a meter connection, the combination of a rigid bar adapted to extend substantially horizontally and provided at the ends thereof with substantially cylindrical sockets extending transversely therethrough, a pair of substantially cylindrical sleeve members provided with screw threads whereby they may be connected to the ends of a pair of gas pipes, *said sleeve members being so constructed and arranged as to be insertable axially into said sockets by shifting the bar towards the gas pipes,* and shaped to fit in said sockets, means for holding said members against axial displacement with respect to the bar after insertion into the sockets, and coupling nipples connected to and depending

LENROOT, Associate Judge, dissenting.

from the sleeve members and provided with means at the lower ends thereof for connection to the tubes of the meter."

The critical part of count 1 with which we are here concerned has been italicized. In somewhat different language, each of the other counts contains a similar clause relating to the manner of construction and the resulting adaptability for installation. This feature of the counts first appeared in the single claim of the McKee patent. After issuance of the McKee patent, with its single claim, Noonan, while his application was pending, amended his specification and inserted the claims which are the counts at bar, and in order to secure their allowance stated to the Patent Office that his structure was different from that of McKee and pointed out the difference. He stated that his construction and mode of operation was "specifically, and very importantly, different from that of Mc-Kee."

The Examiner of Interferences, in awarding McKee priority of invention in the counts at bar, stated:

"While the counts in their present form are taken from the Noonan patent, the record clearly shows that their actual source is the McKee patent number 1,838,778, this being the patent sought to be reissued by the McKee application here involved. This origin of the counts is apparent upon comparing them with the single claim of the McKee patent and is, moreover, expressly admitted in the first complete paragraph on page 8 of the amendment filed April 9, 1932, in the Noonan case, this being the amendment by which the counts were inserted. It is especially to be noted that the limitation which forms the principal point of contention here, namely *the statement that the sleeves may be screwed onto the gas pipes and the bar then moved up to them,* originated with McKee. In view of this fact it seems clear that, although the counts appear in the Noonan patent, they must be construed in the light of the McKee case (Cox v. Headley and Thompson, [49 App.D.C. 341, 265 F. 981] 275 O.G. 419, 1920 C.D. 183; Beatie v. Pollock, [71 F. (2d) 306] 448 O.G. 5)." (Italics ours.)

After reciting other Patent Office action, the Examiner of Interferences further stated:

"It follows that the primary examiner has, in effect, held twice that Noonan cannot make the counts and once that he can. This would seem to indicate that Noonan's

right to make them is at least doubtful and it is the general rule that doubts should be resolved against a party who seeks to appropriate matter first claimed by another (Lindley v. Shepherd, [58 App.D.C. 31, 24 F.(2d) 606] 1928 C.D. 97, 370 O.G. 513; Steenstrup v. Morton, 1929 C.D. 153, 382 O. G. 571 [58 App.D.C. 343, 30 F.(2d) 867])."

The Examiner of Interferences called attention to the fact that McKee secured the allowance of his original claim over Noonan (before Noonan made the amendment and added the additional claims, McKee having been in an interference with the Noonan application) largely on the strength of the importance he attached to the functional allusion to the method of assembly, and furthermore stated that if the functional limitation be ignored, the Mc-Kee claim will read directly on the prior art. The Examiner of Interferences then concluded that under such circumstances, when the question of the right of Noonan to make the claims was the issue, the limitation with reference to the method of assembly could not be ignored. On the proposition that functional limitations in apparatus claims must be considered as material he cited the following authorities: Thomson Meter Co. v. National Meter Co. (C.C.) 106 F. 519; Masseth v. Larkin et al. (C.C.) 111 F. 409; E. & H. T. Anthony Co. v. Gennert (C.C.A.) 108 F. 396, 397; Regent Mfg. Co. et al. v. Penn Electrical & Mfg. Co. (C.C.A.) 121 F. 80, and E. H. Freeman Electric Co. v. Weber Electric Co. (C.C.A.) 262 F. 769, affirmed 256 U.S. 668, 41 S.Ct. 600, 65 L.Ed. 1162.

■ It seems to us that the whole question depends upon whether or not Noonan's added claims and the amendment of the specification, descriptive of how the attachment is made, was new matter. This question depends upon what Noonan's original application disclosed, since the right to make claims, even in a patent, must depend upon the original disclosure thereof. Pohle v. McKnight, 1905 C.D. 549.

■ We agree with the Examiner of Interferences that Noonan's case fails to suggest in any way the manner of assembly suggested in the counts at bar. An entirely different method is stated in his specification. His description of the mode of operation contains many numerals and references to various portions of the meter bar and the pipes and is recited at such length that quotation here is not advisable. However, we think he construct-

ed his device with the intention that the sleeve was placed in the bar at the time it was fabricated, and that not only was there a failure of suggestion of removability or adaptability for insertion by the gas fitter at the time of installing the meter, but he specifically stated in his specification:

"* * * A spline pin 21 in the ring 18 engages a peripheral groove 22 in the head 15 to hold the latter against endwise movement."

The pin there referred to is shown in Noonan's patent drawing and is also shown in Noonan's Exhibit B, which is a drawing from which Noonan's last model was made. The drawing shows a hexagonal shoulder at the lower end of the sleeve and a pair of pins for holding the sleeve in the bar. The pins are not of the character that are ordinarily intended to be removed. No provision is made for removing them and they are so finished that the ends of the pins showing on the sides of the bar are flush with the surface of the same.

Appellant in this court contends that Noonan's drawing inherently discloses a fitting which does not have the capacity of being assembled according to the requirements of the counts and, there being no description of such capacity in the original specification, Noonan has no right to make the counts.

Noonan argues, first, that it is immaterial whether the pin can be removed or not; second, that the pin does not have to be a tight fit, and that the pin might be inserted when the meter is being installed.

Concerning Noonan's amendments and the effect of the pins in the Noonan structure above referred to, the Examiner of Interferences said:

"Under the circumstances, it seems evident that the amendment filed by Noonan after he had seen McKee's patent and containing a disclosure of the new method of assembly involved new matter. The mere disclosure of an apparatus does not entitle an applicant to describe and claim every way in which it might conceivably be used. As stated in In re Manson, 238 O.G. 1641, 1917 C.D. 152, an applicant whose device, in performing its intended function, might or might not carry out a given method is not entitled to amend his case by describing and claiming such method. In the present case it is obvious that Noonan's fitting may achieve the purpose for which it is intended without the employment of the method indicated in the counts: in fact the method described in his original specification is completely at variance with that set forth in the counts. It is believed to be clear, therefore, that Noonan is not entitled to claims to the method of assembly which consists in securing the sleeves to the gas pipes before they are inserted in the sockets of the bar. *Consequently, if the counts are limited to such a method, he cannot make them even if his device is physically capable of use in the manner contemplated by the counts. For reasons already given, it would appear that the counts should be construed as so limited.* [Italics ours.]

"Assuming, however, that the counts require nothing more than a device having the capacity of being assembled in the suggested manner, it is still necessary to show that the pins 21 of Noonan are susceptible of being removed and replaced at the time of assembly. There is clearly no express disclosure of such removability and there is nothing in the described method of assembly which would require that the pins be loose or removable. Consequently, the capacity for assembly in the manner set forth in the counts is not necessarily inherent in Noonan's original disclosure. Even if this disclosure be construed in the most favorable light, the device produced by a mechanic following it would be quite as likely to have fixed pins as removable ones. Accordingly, in view of In re Manson, supra, Noonan is not entitled to claims based on the assumption that his pins must be loose.

"There are, moreover, some very persuasive reasons for holding that the Noonan disclosure is inconsistent with the idea that the pins are to be loose. In the first place, Sauser, the draftsman who made the drawing of the Noonan application, testifies that it shows the pin 21 as fixed in its bearing and that, in the device from which he made the drawing, the pin was so fixed. He points out that the ends of the pin are so finished as to be flush with the surface of the bearing. It does not seem reasonable that a pin which was designed to be removed and replaced on the job would have this form. It would be extremely difficult, in driving such a pin, to position it in such a manner that, when driven, it would assume the exact position shown in Noonan's drawing. Further, the shape of the ends would, as pointed out by two witnesses (Sauser, XQ's 20, 22; Olsen Q. 74) make the removal of the pin with a center punch extremely difficult. It seems clear, therefore, that the drawing, as stat-

ed by Sauser, shows a pin which is inserted once and for all and the ends of which are shaped, after its insertion, to conform with the housing. It is quite inconsistent with the idea that the pin is to be removed."

In much of what the Examiner of Interferences has said, which is above quoted, we agree. In this case, however, under our view, it is not necessary to go as far as the Examiner of Interferences did in the above-italicized language. In other words, if the Noonan structure inherently showed the method of operation prescribed by the counts, his claims and specification not mentioning it, a different question would be presented.

■ We are of the opinion that the Noonan device as originally disclosed was not intended to be assembled as the counts called for, that such a mode of assembly is not inherent in such a structure, and that the said amendments that were made constituted new matter. There is considerable testimony in the record which the Examiner of Interferences has well discussed, and we do not need to discuss it here. Some of McKee's testimony goes to the question of the difficulties in attempting to assemble the Noonan device as required by the counts. To say the least, the testimony discloses that it would be impracticable and obviously unsatisfactory to assemble the Noonan device as called for by the counts. It is pointed out by some of the witnesses that it would be inconvenient to do so, and that injury would flow from the hammering incident to the insertion or removal of such a pin. It must be remembered that the pin in the Noonan construction has a finished end which is flush with the surface of the bar. The pin has the characteristics of permanency rather than removability.

■ Under the circumstances of this case, we think the functional limitations may not be ignored as was done by the board in reversing the decision of the Examiner of Interferences. The board was of the opinion that the "clause concerning capability or order of assembly" of the device was not material, and that such an order of assembly was obviously true in the Noonan device. The board stated:

"* * * We are not convinced but that the pins shown by Noonan although beveled on their ends might not be easily removed by any one of ordinary mechanical skill. It is further to be observed that

the order of assembly is merely a reference to a capability and not a definite or positive limitation even of an order of assembly."

We think the record clearly shows that the board is in error with reference to the mode of assembly of the device by Noonan or the capabilities of its being assembled in accordance with the counts.

■ On the question as to whether certain kinds of functional limitations in the counts may be ignored, the authorities cited by the Examiner of Interferences seem to be quite pertinent, but it will not be necessary to discuss them all. All the cases cited are equity cases, involving the question of infringement. It has frequently been pointed out that in the interference practice in the Patent Office, for reasons which are obvious, the tribunals do not always, in their interpretation of counts, employ the same rules as do the courts in equity, where the infringement of claims is involved. Nevertheless, if the so-called functional limitations being considered by the courts in the above-cited cases were material and essential and should not be ignored, we can see no reason why, under the peculiar and rather exceptional statement of facts at bar, the limitation now under consideration should have been ignored by the Board of Appeals in arriving at its conclusion. See Macfarren v. Morgan, 58 App.D.C. 77, 24 F.(2d) 1003.

In Thomson Meter Co. v. National Meter Co., supra, the claim of a patent for a disk water meter alleged to have been infringed contained the functional clause "whereby the impact of the inflowing current upon the disk is decreased, substantially as set forth." In holding this limitation to be such a one that it could not be disregarded and that it was material, the court said:

"All the experts except Mr. Benjamin agree that the words in the claim in suit 'whereby the impact of the inflowing current upon the disk is decreased' mean that the impact in the Thomson meter is less than that in the prior Thomson & Lambert meter. Mr. Benjamin practically contends that these words must be eliminated from the claim. If the former meaning be adopted, the defendant's construction does not infringe; for it increases impact, as compared with Thomson & Lambert. The construction contended for by Mr. Benjamin cannot be adopted, because, as a matter of law, it is settled that such a spe-

cific statement of function thus inserted into a claim as material cannot be disregarded."

The court then cited the case of Computing Scale Co. v. Keystone Store-Service Co. (C.C.) 88 F. 788, 791, in which a claim containing the functional clause "whereby the pivotal supports of the beam and rod, e, may be brought into alignment, as and for the purpose described," was held to be material and said:

"The insertion of these words meant something, and they must be given due weight. The construction we adopt accords them meaning; that of the complainant ignores their presence, and makes nonessential what the patentee and the office have deemed material and essential."

In E. & H. T. Anthony Co. v. Gennert, supra, the Circuit Court of Appeals, Third Circuit, had under consideration the materiality of the limitation in a claim relating to a photographic shutter, which claim contained the limitation: "Whereby they * * * are enabled to fold back into the case side by side." Concerning this limitation, the court said:

"It will thus be seen that the only device disclosed by the patent is one where the means and relations suggested result in the functional limitation that the wings 'are enabled to fold back into the case side by side.' In the respondent's device we find four sectional wings, but in different relations to each other from those of the patent in suit. One set of wings is pivoted at the upper and one at the under side of the lens opening. Both sets have nonmedian centers of motion. The wings do not move by engaging each other, and effect the functional result incident to every sectional shutter, viz. exclusion of light; but when they open to admit light they do it in a wholly different way from the patented device. The sets of wings, instead of folding back into the case side by side, withdraw from each other to the four corners. Both pivoting and relation of parts are such that the wings cannot fold back into the case side by side, and effect the expressed purpose of the patent, viz. 'when the shutter opens, the wings B, B, close back in the same space occupied by the wings A, A.' To ignore the express functional limitation of the claim, viz. 'whereby they are enabled to fold back into the case side by side,' would be to create a new claim; not interpret the one granted."

The other cases cited by the Examiner of Interferences, and others to which reference might be made, are to the same effect.

Believing the said limitations in the counts at bar to be material, and that the said amendments constituted new matter in the Noonan application, we must reverse the decision of the Board of Appeals and award priority of invention of the subject-matter of the counts at bar to Garnet W. McKee, the appellant.

Reversed.

LENROOT, Associate Judge, dissents.