MAGIC FINGERS, INC., Plaintiff,

v.

Robert E. AUGER, individually and d/b/a Vibra-Rest; Leo Pomerleau, individually and d/b/a Vibra-Rest; and Northeastern Furnishings, Inc., Defendants.

Civ. No. 8–18.

United States District Court
D. Maine, S. D.

July 13, 1964.

S. C. Yuter, Lawrence Greenapple, New York City, Harris M. Isaacson, Philip M. Isaacson, Lewiston, Me., for plaintiff.

William H. Clifford, Lewiston, Me., Lewis I. Naiman, Gardiner, Me., Robert Shaw, Robert H. Rines, Boston, Mass., for defendants.

GIGNOUX, District Judge.

This is an action for infringement of United States Letters Patent No. 3,035,-572, with additional counts for unfair competition and breach of contract. The matter is presently before the Court up-on defendants' motions for summary judgment upon the patent count only. As there is no genuine issue as to any fact material to a determination of the merits of these motions, Fed.R.Civ.P. 56, and as "[t]he prior art and the patent claims are so simple that they can be readily understood by any normally in-telligent person without the aid of expert testimony," Glagovsky v. Bowcraft Trimming Co., 267 F.2d 479, 480 (1st Cir.), cert. denied, 361 U.S. 884, 80 S.Ct. 155, 4 L.Ed.2d 120 (1959); George P. Converse & Co. v. Polaroid Corp., 242 F.2d 116, 120 (1st Cir. 1957), the parties agree as to the propriety of the summary judgment procedure.

The claimed invention consists of an electric vibrator which can be attached to the coil springs of furniture, so that conventional coil spring furniture can be thereby quickly and easily converted into massaging furniture. The essential elements of the vibrator are an electric motor with an eccentric weight on its output shaft and the means for attaching the machine to coil springs. The basic structural element is a circular plate. Mounted on its underside, near its center, is an electric motor with its output shaft perpendicular to the plate. Attached to the shaft is an eccentric weight. A cylindrical metal housing, together with the plate, completely encompasses the motor and the shaft. Evenly spaced near the circumference of the plate on its top side are four attachment devices. Each of these consists of a nut and bolt which hold two washers, separated by a spacer, firmly against the plate. The spacer in each group has a smaller diameter than the two washers and has a thickness approximately equal to the diameter of the wire used in an ordinary coil spring. Thus there is a slot between the two washers in each group which is parallel to the plate. When installed, for example on a bed, the vibrator is placed in the center of a group of four adjacent spring coils. The plate is horizontal; the attaching washers are above the plate, the motor and housing are below it. The wire of each of the four spring coils fits snugly into the slot in one of the groups of washers. When energized, the electric motor rotates the eccentric weight, which creates the desired vibrating motion.

Plaintiff is the assignee of John J. Houghtaling, the alleged inventor, who

received the patent in suit on May 22, 1962, after extended negotiations with the patent office, upon an application which was filed on June 20, 1960. Since then, plaintiff's vibrator has achieved marked commercial success. Plaintiff attributes this success to four features of the Houghtaling vibrator, which it claims constituted significant advances over the prior art and upon which it predicates patentability; namely, the washer-spacer attachment devices, each having a "normally fixed opening" approximately the width of a spring coil wire (the "wedge-clamp" feature), and their arrangement near the circumference of the plate so as to fit over the wires of four adjacent spring coils (the "slip-over and spring-into-place" feature), which plaintiff contends together provided the new function of quick and easy attachability to existing furniture; the mounting of the motor with its output shaft at right angles to the plate so that the eccentric weight rotates in a plane parallel to the plate (the "parallel-plane vibration" feature), which plaintiff argues provided the new function of an equally distributed gentle vibrating motion ("like the waves from a pebble in a pond"); and the use of a cylindrical housing to enclose the electric motor and eccentric weight (the "cup-shaped housing" feature), which plaintiff asserts was effective to reduce construction costs and to enclose the motor for fire prevention purposes.

In their answers defendants assert the customary defenses of invalidity and non-infringement. However, the present motions are based solely on defendants' contention that the alleged invention was in public use or on sale in this country more than one year prior to the date of the application for plaintiff's patent, and that hence the patent is invalid under 35 U.S.C. § 102(b), which provides in pertinent part:

"A person shall be entitled to a patent unless—

\* \* \* \* \* \*

"(b) the invention was \* \* \* in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States \* \* \*."

The asserted instance of prior public use or sale, which plaintiff does not dispute, is the sale on October 17, 1958, by the State Furniture Company of Augusta, Maine, to one Lewis I. Naiman of a vibrating bed unit manufactured by the Englander Company, Inc. of Chicago, Illinois.[1] The Englander vibrating bed unit consisted of a mattress, a box spring and a factory-installed electric vibrator, which Mr. Naiman subsequently removed and successfully attached to the spring coils of his own conventional bed.

An examination of the Englander vibrator unit reveals that it very closely resembles that of Houghtaling. The only physical differences which conceivably could be significant are two: the Englander motor is so mounted that its output shaft is parallel to the plate rather than perpendicular to it as in the Houghtaling vibrator (the "parallel-plane vibration" feature); and the Englander housing is not cylindrically shaped as is the Houghtaling housing (the "cup-shaped housing" feature). One insignificant difference is that the Englander plate is square, whereas the Houghtaling plate is circular. Otherwise, the two vibrators appear to be virtually identical. Of special significance, the Englander and the Houghtaling vibrators have attachment devices which are identical in construction and are located in precisely the same position with respect to each other and to the center of their respective plates (the "wedge-clamp" and "slip-over and spring-into-place" features).

1. A single prior public use or sale is sufficient to invalidate a patent under 35 U.S.C. § 102(b). Egbert v. Lippmann, 104 U.S. 333, 26 L.Ed. 755 (1881); see Atlas v. Eastern Airlines, Inc., 311 F.2d 156 (1st Cir. 1962), cert. denied 373 U.S. 904, 83 S.Ct. 1290, 10 L.Ed.2d 199 (1963).

In order to determine whether the Englander vibrator anticipated, and therefore invalidates, plaintiff's patent, it is first necessary to delineate with precision the patentable features of the claimed invention. To do this, one must look to the claims in the patent because "the claims made in the patent are the sole measure of the grant." Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 339, 81 S.Ct. 599, 601, 5 L.Ed.2d 592 (1961). The claims must be construed with reference to the specifications and drawings, Moon v. Cabot Shops, Inc., 270 F.2d 539 (9th Cir. 1959), cert. denied, 361 U.S. 965, 80 S.Ct. 596, 4 L.Ed.2d 546 (1960); Westinghouse Elec. Corp. v. Hanovia Chem. & Mfg. Co., 179 F.2d 293 (3d Cir. 1949), and also in the light of the proceedings in the patent office, Smith v. Springdale Amusement Park, Ltd., 283 U.S. 121, 51 S.Ct. 368, 75 L.Ed. 878 (1931); E. Van Noorden Co. v. Cheney Co., 75 F.2d 298 (1st Cir. 1944); Nickerson v. Bearfoot Sole Co., 311 F.2d 858, 862 (6th Cir.), cert. denied, 375 U.S. 815, 84 S.Ct. 48, 11 L.Ed.2d 50 (1963). More specifically, under the doctrine of file wrapper estoppel, the claims must be read and interpreted "with reference to claims that have been cancelled or rejected and the claims allowed cannot by construction be read to cover what was thus eliminated from the patent." Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 220–21, 61 S.Ct. 235, 239, 85 L.Ed. 132 (1940); Moon v. Cabot Shops, Inc., supra; Kromer v. Riegel Textile Corp., 227 F.2d 741 (7th Cir. 1955), cert. denied, 350 U.S. 1007, 76 S.Ct. 651, 100 L.Ed. 869 (1956); Midland Steel Prods. Co. v. Clark Equip. Co., 174 F.2d 541 (6th Cir.), cert. denied, 338 U.S. 892, 70 S.Ct. 243, 94 L.Ed. 548 (1949). In essence, this doctrine is an application of well-settled equitable principles to the proceedings in the patent office; that is, a patentee may not subsequently take a position inconsistent with one he maintained during the proceedings which resulted in the issuance of his patent. Straussler v. United States, 290 F.2d 827 (Ct.Cl.1961). Under these recognized principles, a patentee is estopped to assert as his invention features other than those upon which the patent office allowed his claims as patentable over the prior art.

An analysis of the file history of plaintiff's patent discloses that in applying for the patent, Houghtaling originally made ten claims, all of which the patent examiner rejected as met by patents previously issued to others, including Patent No. 2,715,901 issued to Oliver P. Blake on August 23, 1955, for a vibrating contour chair. Representative of Houghtaling's original claims was claim 5, which read as follows:

"5. In a vibrator for attachment to spring constructions of furniture and the like comprising a *cup-shaped housing*; a *cover plate* for said housing; *means for attaching said housing to said plate*; an *electric motor* mounted on said plate and depending into said housing; an *eccentric weight* mounted on said output shaft; and *attaching means* on the side of said plate opposite that to which said motor is attached and *adapted to be connected to certain localized wires forming said spring construction.*" (Emphasis added to indicate elements of supposed invention.)

Claim 5 was rejected "as fully met by Blake," which plainly incorporated all of the elements of Houghtaling's alleged invention—that is, a cup-shaped housing, a cover plate, means for attaching the housing to the plate, an electric motor, an eccentric weight and attaching means adapted to be connected to the spring construction of the furniture to which the vibrator was to be attached.[2]

2. The examiner also rejected, "as fully met by Blake," Houghtaling's original claim 2, which specified that the motor was mounted with its output shaft "at right angles to said plate" and that the eccentric weight was mounted on the output shaft "for rotation in a plane parallel to said plate," (the "parallel-plane vibration" feature).

Following the patent office rejection of his original claims, Houghtaling amended his application to reduce to six the number of claims, and to rewrite those remaining in order more accurately to define his asserted invention over the prior art by describing with greater specificity the attaching means. Thus, original claim 5 was rewritten as claim 13, which read as follows:

"13. In a vibrator for attachment to spring constructions of furniture and the like comprising a plate; an electric motor mounted on said plate with an output shaft; an eccentric weight mounted on said output shaft for rotation therewith; and attaching means *spaced relatively to each other about said plate such that they are in juxtaposition to wires forming said spring construction when said plate and motor are placed in operating position relative to said spring construction, each attaching means comprising means spaced from said plate a distance substantially equal to the thickness of the wire of said spring construction."* (Emphasis added to indicate additional limiting language.)

Substantially the same additional limiting language appeared in all six of the remaining claims as rewritten. The patent examiner rejected all the claims "as unpatentable over Blake," and made the rejection *"FINAL."* [3]

After this rejection, Houghtaling added further limitations to all his claims, including claim 13, which was amended to bring it into the form of patent claim 1, which reads as follows:

"1. A vibrator for attachment to *the wires of coil* spring constructions of furniture and the like comprising a plate; an electric motor mounted on said plate with an output shaft; an eccentric weight mounted on said output shaft for rotation therewith; and *a plurality* of attaching means, each attaching means *having a slot with normally fixed opening space* substantially equal to the thickness of the wire of said spring construction *to be engaged thereby, the attaching means being radially located relative to the center of said plate on a locus slightly greater than the distance between portions of wires to be engaged by said slots and the center of said plate when held in operating position by said wires, so that said attaching means can be slipped over said wires which will spring into place in said slots and thereby hold said vibrator in operating position."* (Emphasis added to show language added by amendment.)

The added limiting language appears virtually verbatim in all six of the patent claims as finally allowed. [4] In urging that claim 13, as amended, was patentable over Blake, Houghtaling's attorney argued as follows:

"Claim 13 was rejected on Blake 2,715,901. Claim 13 has been amended in a manner which is believed follows the discussion so as to emphasize that the vibrator attach-

---

3. The "cup-shaped housing" and the "parallel-plane vibration" features were included in several of the rewritten claims thus rejected.

4. Patent claims 2 and 4 do not differ from claim 1 in any respect which is presently material. Patent claim 3 differs from claim 1 in that after "shaft" there is inserted "at right angles to said plate" and after "therewith" in the following line there is inserted "in a plane parallel to said plate." As the patent examiner found in rejecting Houghtaling's original application claim 2, n. 2 supra, the right angle and parallel plane features are plainly disclosed in Blake. In patent claims 5 and 6 after "comprising" in the second line there is inserted "a cup-shaped housing adapted to fit between more than two adjacent coil springs." As the patent examiner found in rejecting Houghtaling's original application claim 5, the cup-shaped housing feature is also fully disclosed by Blake.

ing means has a *slot* with a *fixed opening* space substantially equal to the thickness of the wires of the construction *to be engaged* thereby. It is not necessary to unbolt the same in order to mount the vibrator in position on the springs or wires thereof. The claim also has been amended to set forth that it is a vibrator for attachment to the wires of the *coil* spring construction. The claim also has had added that the attaching means are radially located relative to the center of the plate on *a locus slightly greater than the distance between portions of wires to be engaged by the slots and the center of the plate* when it is held in operating position so that the attaching means can be *slipped* over the wires *which will then spring* into place in said slots. This defines clearly over Blake and the other references and will cover the various aspects of applicant's arrangement, including those shown in Figs. 3 and 4 of the drawing and an arrangement wherein, for example, two attaching means engage the wires of coil springs or the like and the other two are connected by links to the coil springs. It is believed that with these amendments, claim 13 clearly defines over Blake which does not show an arrangement wherein the attaching means have a fixed slot in which the coil spring wire or wires can be slipped over and engaged by the slot so as to hold the vibrator in a simple manner." (Emphasis in original.)

Houghtaling's attorney asserted that the five remaining claims defined over Blake for the reasons he gave in support of claim 13.

Thus the file history of plaintiff's patent plainly shows that what Houghtaling's attorney asserted and the patent office allowed as the sole features of novelty of Houghtaling's claimed combination were the fixed slot providing washer-spacer attaching means and their particular arrangement; that is, the "wedge-clamp" and "slip-over and spring-into-place" features. The doctrine of file wrapper estoppel precludes plaintiff from now claiming any other elements of Houghtaling's vibrator as the patentable features of his invention.

Plaintiff argues that Houghtaling's invention resided in his discovery that ready attachability of the vibrating unit to existing furniture could be achieved by presetting the width of the slot between the washers at a "normally fixed opening" (the "wedge-clamp" feature), then slipping each of the groups of washers over one coil of a coil spring and permitting the coil to lodge snugly in the slot (the "slip-over· and spring-into-place" feature). But even if it be conceded, as is apparently the fact, that Houghtaling conceived this possible functioning of the Englander vibrator—that is, that by tightening the nuts and bolts before installing the vibrator he could avoid the necessity, as visualized by the Englander people, of a workman placing two hands into the small area between four adjacent coils of a coil spring in order to tighten the nut on each bolt in place—this is not patentable invention. As has already been stated, the Englander and Houghtaling vibrators have identical attachment devices identically arranged. Undoubtedly, had he but thought of it, anyone could have snapped the Englander vibrator, with no structural change, onto coil springs without loosening the attaching nuts and bolts. It is a well settled principle of patent law that "it is no new invention to use an old machine for a new purpose. The inventor of a machine is entitled to the benefit of all the uses to which it can be put, no matter whether he had conceived the idea of the use or not." Roberts v. Ryer, 91 U.S. 150, 157, 23 L.Ed. 267 (1875); General Elec. Co. v. Jewel Incandescent Lamp Co., 326 U.S. 242, 66 S.Ct. 81, 90 L.Ed. 43 (1945); Old Town Ribbon & Carbon Co. v. Columbia Ribbon & Carbon Mfg. Co., 159 F.2d 379 (2d Cir. 1947); Triangle Conduit & Cable Co. v. National Elec. Prods. Corp., 149 F.2d 87

**378**

(3d Cir.), cert. denied, 326 U.S. 744, 66 S.Ct. 59, 90 L.Ed. 444 (1945). This is so, not because it may not require inventiveness to discover it, but because the statute allows a patent only for a "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101; H. K. Regar & Sons, Inc. v. Scott & Williams, Inc., 63 F.2d 229 (2d Cir. 1933); International Nickel Co. v. Ford Motor Co., 166 F.Supp. 551, 560 (S.D.N.Y.1958).[5] There must be a structural change in an old machine for it to support a new patent; otherwise, there is merely a new use for the old machine. When that change presupposes a new use for the machine not discoverable without inventive imagination, a very slight change may be sufficient; but there must be some change. Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co., 18 F.2d 66 (2d Cir.), cert. denied, 274 U.S. 753, 47 S.Ct. 765, 71 L.Ed. 1333 (1927); Shell Development Co. v. Watson, 148 F.Supp. 373 (D.D.C. 1957). Cf. Topliff v. Topliff, 145 U.S. 156, 161, 12 S.Ct. 825, 36 L.Ed. 658 (1892). The Englander vibrator anticipated that of Houghtaling because there was no structural change in the latter which resulted in a new use. There was a new use—that of quickly and easily converting conventional furniture into massaging furniture—but it did not arise from any changes which Houghtaling made. The Englander vibrator could have been used for precisely the same purpose.

Plaintiff relies on the decisions of the Court of Appeals for the First Circuit in Foster Metal Products, Inc. v. Jacoby-Bender, Inc., 255 F.2d 869 (1st Cir. 1958), and in Ellis, Inc. v. Denis, 224 F.2d 311 (1st Cir. 1955) as controlling in the present case. In the former the court held valid the patent on an expandable bracelet which unskilled persons could quickly and easily lengthen or shorten by attaching or removing links because it "resulted not only in a new function but supplied also the answer to a long-felt need." 255 F.2d at 874. But that case is significantly distinguishable from this in at least two respects. First, the new function resulted from a structural change—the keyhole shaped slot in each link was cut at a different angle from those in other bracelets. Second, the bracelet utilized a new principle to hold the links in place—the studs, which passed through the slots and held the bracelet links together, were held in place by the natural resolution of forces in a plane perpendicular to the stud, while in other, more conventional types of bands, the studs were held in place by different means.

In Ellis, Inc. v. Denis, supra, the Court of Appeals held valid the patent on a cable shortening device because the patentee had improved upon the prior art to a sufficiently marked degree, in view of the commercial success of his product and the extent of the need it filled, to warrant the protection of a patent. That case is also distinguishable from this in that there the patented device represented a marked mechanical improvement over the prior art, which resulted in an extraordinary increase in efficiency. Here, although there may have been an extraordinary increase in efficiency, compare Fowler v. Sponge Prods. Corp., 246 F.2d 223 (1st Cir. 1957), there was no related marked mechanical improvement over the prior art.

The Court holds that the Englander vibrator sold in 1958 anticipated, and therefore invalidates, United States Letters Patent No. 3,035,572. Defendants' motions for summary judgment upon Count I of the complaint are therefore granted.

In accordance with the provisions of Fed.R.Civ.P. 54(b), the Court determines there is no just reason for delay and directs the Clerk to enter forthwith final judgment dismissing Count I of the complaint.

It is so ordered.

---

5. Plaintiff makes no claim to a method or process patent. See Application of Hack, 245 F.2d 246, 44 CCPA 954 (1957).