54 CCPA

**Ewald A. KAMP, Appellant,**

v.

**John J. HOUGHTALING, Appellee.**

**Patent Appeal No. 7752.**

United States Court of Customs and Patent Appeals.

May 11, 1967.

Kirkpatrick, J., dissented.

———◆———

Olson, Trexler, Wolters & Bushnell, Richard R. Trexler, Chicago, Ill. (Charles

L. Sturtevant, Washington, D. C., of counsel), for appellant.

Lawrence Greenapple, New York City, for appellee.

Before WORLEY, Chief Judge, RICH, SMITH and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.[*]

RICH, Judge.

Kamp, the senior party in Interference No. 93,983, appeals from the decision of the Board of Patent Interferences awarding priority to Houghtaling on the ground that the three counts in issue are not supported by Kamp's reissue application.[1] The counts were copied from Houghtaling patent No. 3,035,572,[2] count 1 verbatim and counts 2 and 3 in modified form.

The invention is a motor-driven, eccentric weight vibrator for attachment to coil-spring assemblies of furniture, such as beds and chairs.

The main issue is Kamp's right to make the counts. Substantially the same language is involved as to all three counts. That language is italicized in count 1 below, which was copied verbatim from the Houghtaling patent:

*A vibrator for attachment* to the wires of coil spring construction of furniture and the like comprising a plate; an electric motor mounted on said plate with an output shaft; an eccentric weight mounted on said output shaft for rotation therewith; and a plurality of attaching means, each attaching means having *a slot with normally fixed opening space substantially equal to the thickness of the wire of said spring construction to be engaged thereby*, the attaching means being radially located relative to the center of said plate on a locus slightly greater than the distance between por-

---

[*] Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

[1]. Serial No. 280,173 for reissue of Patent No. 3,048,168 granted on application serial No. 731,518 filed April 28, 1958.

[2]. Granted on application serial No. 37,429 filed June 20, 1960. For a suit involving this patent, see Magic Fingers, Inc. v. Auger, 232 F.Supp. 372 (D.Me.), affirmed 339 F.2d 604 (1st Cir. 1964).

tions of wires to be engaged by said slots and the center of said plate when held in operating position by said wires, *so that said attaching means can be slipped over said wires which* *will spring into place in said slots* and thereby hold said vibrator in operating position.

Kamp's construction is shown in the figures of his drawings set out below:

In the drawings, 20 represents the coils of a box spring secured to its frame through means including parallel lateral connecting wires 30 and longitudinal connecting wires 32. An electric motor 38, having an eccentric weight 43 on its shaft is held suspended from a vibrator plate 44 by four spaced bolts 46. The vibrator plate is attached to the box spring at a location intermediate four adjacent coil springs by four spaced attachment means. Each attachment means comprises a split mount which includes a pair of mounting buttons 48, which buttons have contiguous portions of reduced diameter. The lateral and longitudinal connecting wires are located in the groove 50 formed by the buttons. The buttons are each held together by a nut and bolt 52 and 54, respectively, with the bolt extending through a hole in the vibrator plate 44 to attach the vibrator to the wires of the spring.

The Houghtaling constructions are shown in Figs. 1, 3 and 4 as follows:

The vibrator of Houghtaling is mounted below a mounting plate 11 which in turn is secured to wires 24 and 25 of a box spring between four adjacent coils. The attachment is made through bolts 20 fixed to the plate 11 and supporting washers 21 separated by a spacer 22 of smaller diameter than the washers. It is stated that the washers 21 and spacers 22 "may be of any material but preferably of sound deadening material such as a solid, non-metallic material."

The important elements of the structures from the standpoint of the legal

issue are the "attaching means" of the counts which consist of Kamp's assemblies 47, best shown in his Fig. 6, and Houghtaling's assemblies, best shown in his Fig. 1, consisting of the bolts 20, washers 21, and spacers 22. The sole question is whether the definitions of these parts and their functioning in the counts, which all originated as Houghtaling claims, with particular regard to the words emphasized in count 1, supra, find support in Kamp's disclosure.

After Kamp copied the claims which are the counts, the interference was declared. Houghtaling filed no preliminary statement and hence was placed under an order to show cause, as junior party, why judgment should not be entered against him.

Houghtaling thereupon, by way of response, moved to dissolve the interference on the ground, inter alia, that Kamp has no right to make the counts by reason of the above-emphasized limitations. This motion, according to usual practice, was considered and decided by the primary examiner who filed a written opinion. Before him, Houghtaling made substantially the same arguments he is making here and also made before the board. The examiner's very lucid opinion states that Houghtaling urged granting of the motion since the following features are absent from the Kamp disclosure:

(1) The Houghtaling device is intended to be installed in an existing coil spring unit whereas the Kamp device is installed at the factory.

(2) Kamp does not have a slot with a normally fixed opening.

(3) Kamp cannot meet the limitation "so that said attaching means can be slipped over said wires which will spring into place in said slots and thereby hold said vibrator in operating position."

In ruling against the motion, the examiner answered Houghtaling's arguments as follows:

With respect to argument (1) it is the Examiner's position that whether the device is installed at the factory or elsewhere is immaterial since the counts do not restrict the locale of assembly. The broad recitation "for attachment" is clearly supported by the Kamp disclosure in which the mounting buttons shown in Figs. 4 and 6 are shown connected to the coil spring construction to thereby satisfy the functional limitation that the vibrator of Kamp is "for attachment to the wires of coil spring constructions".

With respect to argument (2) that Kamp does not show a slot with a normally fixed opening, it is the Examiner's position that this argument [is] clearly refuted by the showing of the slot 50 in Figs. 4 and 6 of Kamp in which the free edges are shown to be unsupported and yet spaced from each other. Further, the Draftsmen's symbol employed indicates that the material is plastic having substantial thickness which would inherently possess sufficient rigidity to support the relative phrase "normally fixed". In the Houghtaling disclosure, the washers and spacers 21 and 22 are described as being formed of "any material" but preferably of sound deadening material such as a solid, non-metallic material. Since plastics are obviously contemplated, it appears that the vibrator support elements of each party are substantially identical and therefore the broad limitation "normally fixed opening space" is held to be clearly readable on the disclosures of either party.

With respect to argument (3) that the Kamp disclosure cannot support the functional limitation that the "attaching means can be slipped over said wires", it is the Examiner's position that Fig. 4 of Kamp clearly refutes this argument. The functional recitation "so that said attaching means can be slipped over said wires which will spring into place in said slots and thereby hold said vibrator in operating position" is predicated on the structural limitation set forth in the counts that the attaching means is (being) ["]radially located relative to the cen-

ter of said plate on a locus slightly greater than the distance between portions of wires to be engaged by said slots and the center of said plate when held in operating position by said wires". The Kamp disclosure and specifically Fig. 4 supports the structural limitations set forth above and therefore inherently supports the functional statement dependent therefrom.

We agree with the reasoning of the examiner, a person presumably familiar not only with the application and the patent here involved but with the related art generally.

Following the denial of the motion to dissolve, Houghtaling asked that the question of right to make, together with judgment on the order to show cause, be considered and determined by the board at final hearing.

The board disagreed with the examiner and held that Kamp had not sustained the burden of providing his right to make the counts, making a pro forma award of "priority" to the junior party Houghtaling.[3] This appeal followed.

The board summarized the views of the examiner in the following passage from its opinion:

> In holding that Kamp could make the counts * * * the Primary Examiner held that (1) Kamp's invention includes "a vibrator for attachment", since it has mounting buttons for that very purpose, that (2) the slot 50 in figures 4 and 6 of Kamp obviously has a normally fixed opening space substantially equal to the wire thickness which it receives, and that (3) since the functional statement at the end of the count is based upon the preceding structural limitations Kamp obviously can make it.

We agree with that summary. Nevertheless, the board concluded, for reasons we do not agree with, that Kamp cannot make the counts.

The principal reason for the board's conclusion appears to be that expressed as follows:

> We note first that there is nothing in his [Kamp's] disclosure that *indicates an intention* of supplying a vibrator having a combination of elements
>
>> "so that said attaching means can be *slipped over* said wires which will *spring into place* in said slots and thereby hold said vibrator in operating position." [Emphasis ours.]

We do not consider that we are concerned with expressions of intention in Kamp's specification but only with *structure* disclosed and its *capacity* to function as described in the counts, assuming the "so that" clause to be a limitation of the count without necessarily deciding whether it is or not.

Having carefully studied the record, we agree with the examiner and with appellant that the Kamp specification and drawings clearly disclose a structure in which the attaching means is one "having a slot with normally fixed opening space substantially equal to the thickness of the wire of said spring construction," as specified in count 1. We disagree with the board in that we think the Kamp structure *is capable* of being slipped over spring wires which will spring into place in the slots, as specified in the "so that" clause. There is no limitation in the counts with respect to *two* wires simultaneously slipping into one slot, as shown in Kamp's drawings. For example, if Kamp's vibrator were to be mounted in a bedspring in the manner shown in Houghtaling's Fig. 4, supra, there would be only one spring wire to snap into each slot and the vibrator would surely be secured according to the functional as well as structural terms of the counts. Even as shown in Kamp's Fig. 4, it would be secured if either the pair of wires 32 *or* the pair of wires 30 snapped into the slots, without the other

---

3. The award of "priority" is pro forma because if the board's decision on right to make is correct, then the interference would be dissolved and there being no in-terference, there is no proceeding in which "priority" can realistically be awarded to anyone.

pair doing so, which would mean a single wire in each slot.

It is apparent from the drawings reproduced above that the mounting post assemblies 47 of Kamp and 20–22 of Houghtaling are so similar that anything one will do the other will do. The board discusses the obvious fact that the space between the buttons 48 of Kamp will be variable until the assembly is completed by tightening the bolts 52, 54 and that he does not say when the bolts are tightened. We see no relevance in this consideration. The same is true of Houghtaling's disclosure. It would appear that both parties considered the structure and use of the mounting assemblies to be of such mechanical simplicity as not to require detailed explanation to those skilled in the art of assembling nuts, bolts, and washers since neither says much about them in his specification. Clearly when the bolts are tightened in either structure, a normally fixed opening results which will receive a spring wire.

We therefore hold that the counts are fully supported by Kamp and that he has a right to make them.

The only other issue in the case involves Houghtaling's argument that there is no interference in fact with respect to counts 2 and 3. Houghtaling's claims 2 and 4, of which those counts are modified copies, contain the following limitation:

* * * each attaching means comprising a pair of *rigid* [insulating] washer means * * * to provide a slot with a [normally] fixed opening space * * *. [Emphasis ours.]

Kamp omitted "rigid" in copying those claims. The counts, therefore, are not so limited.

The primary examiner and the board held that there was no distinction between the disclosures on this point. Houghtaling's disclosure describes the washers as "of any material but preferably of sound deadening material, such as a solid, non-metallic material." Kamp's figure 6 shows the use of a plastic or synthetic resin. The term "rigid" is, of course, a relative term. In this context therefore, we agree with the examiner and the board that "rigid" is not a material limitation and that an interference in fact does exist with respect to counts 2 and 3.

Kamp, the senior party, is therefore entitled to the award of priority.

The decision of the board is *reversed. Reversed.*

KIRKPATRICK, Judge (dissenting).

In Guyer v. Cramer, 318 F.2d 757, 50 CCPA 1386, this court stated, with respect to the question of support for interference counts, that "the minimum legal requirement is that support for count limitations be clear." I think it far from clear that the Kamp reissue application supports the three limitations emphasized in the count as reproduced in the majority opinion.

The application does not disclose that the nut and bolt assemblies of the attaching means are tightened to provide fixed spaces between the washers before the wires of the coil spring construction are brought into their final position between the washers. There is thus no suggestion of a vibrator wherein each of the attaching means has a slot with a normally fixed opening space such as to permit attachment to the wires of a coil spring construction with the spring action required by the counts. Moreover, those features of the counts, which the record indicates were relied upon to obtain their allowance in the Houghtaling patent plainly are not inherent in the Kamp disclosure. See also McKee v. Noonan, 86 F.2d 986, 24 CCPA 784.

It seems to me that the majority has stretched the language of the counts and gratuitously attributed to Kamp the basic concept embodied in that language. Such treatment is not sound even as a means of protecting Kamp, as senior party, from losing protection for something he might have previously overlooked claiming. Under Rule 257 of the Patent Office, a senior party who loses an interference on the basis that he lacks support for particular recitations in a

count is not thereby precluded from obtaining allowance of any broader claims which he can support and are otherwise patentable.

I would affirm the board's decision.