52 CCPA

**Murray HAUPTSCHEIN, Milton Braid and Francis E. Lawlor, Appellants,**

**v.**

**Donald Irwin McCANE and Ivan Maxwell Robinson, Appellees.**

**Patent Appeal No. 7234.**

United States Court of Customs and Patent Appeals.

Dec. 17, 1964.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRK-PATRICK.*

ALMOND, Judge.

This appeal is from the decision of the Board of Patent Interferences which awarded priority of invention on all counts in Interference No. 91,876 to appellees. On March 20, 1956 appellees filed an application [1] relating to the subject matter of the counts, and on April 10, 1959 filed a continuation-in-part [2] of this application. On October 18, 1960 a patent [3] issued to appellants. Appellees copied claims 1 to 3 of the patent in their continuation-in-part. These claims are the counts in this interference. The examiner granted appellees' motion to shift the burden of proof based upon their parent application. Neither party took testimony and appellants were placed under order to show cause. At final hearing the sole issue determinative of priority was whether the appellees' parent application was a constructive reduction to practice of the invention defined by the interference counts.

The three counts in issue are:

"1. Compounds having the structure

$$CF_2 - CFR_1$$
$$|\qquad\ \ \ |$$
$$CF_3 - CF_3 - CFR_2$$

where one of $R_1$ and $R_2$ is fluorine and the other is a —$CF_3$ group.

"2. Perfluoro-(1,2-dimethylcyclobutane).

"3. Perfluoro-(1,3-dimethylcyclobutane)."

It can be seen that the counts relate to the specified organic compounds. The

William M. Epes, King of Prussia, Pa. (William A. Smith, Jr., Washington, D. C., of counsel), for appellants.

A. Newton Huff, Wilmington, Del., Frederick Schafer, Washington, D. C., Bernd W. Sandt, Wilmington, Del., for appellees.

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge Worley, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. Serial No. 572,638 for "Novel Perfluorinated Compounds."

2. Serial No. 805,370.

3. U. S. Patent No. 2,957,032, on application serial No. 702,537, filed December 13, 1957.

disclosures of both appellants and appellees indicate that these compounds are formed when perfluoropropene is dimerized as follows:

$$2CF_2 = CF - CF_3 \longrightarrow \begin{array}{c} CF_3 - CF - CF_2 \\ \quad\; | \qquad | \\ CF_2 - CF - CF_3 \end{array} \;+\; \begin{array}{c} CF_2 - CF - CF_3 \\ | \qquad | \\ CF_2 - CF - CF_3 \end{array}$$

---

As indicated, two structural isomers, the 1,2 and 1,3 isomers, are formed. Each of these structural isomers has a *cis* and *trans* stereoisomer.

■ The issue here is whether appellees can rely upon their parent application for priority under 35 U.S.C. § 120. Thus, we must determine whether one skilled in the art would be able to practice the invention defined by the counts with the disclosure of the McCane et al.

parent application at hand, Swain v. Crittendon, 332 F.2d 820, 51 CCPA 1459.

The counts merely call for the two structural isomers of perfluoro-dimethyl-cyclobutane. There is apparently no controversy as to whether one would be able to make these compounds from the McCane et al. parent. The process conditions disclosed in the parent are almost identical with those disclosed in appellants' patent as indicated below:

| Process | Appellants' Patent | Appellees' Parent Application |
|---|---|---|
| Temperature | 240° C. − 800° C. 260° C. − 550° C. preferred. | 250° C. − 700° C. 350° C. − 500° C. preferred. |
| Other Additives | * * * it is preferred to conduct the present process in the substantial absence of any reactant other than perfluoropropene itself. | No catalysts, promotors or solvents are required * * * |
| Pressure | Normally the pressure will range from about 10 p. s. i. g. to about 100,-000 p. s. i. g., with pressures from 100 to 10,000 p. s. i. g. being preferred. | The pressure of the system may be varied over a wide range. Generally, the perfluorinated olefin is charged into a pressure reaction vessel in a liquid form and heated under autogenous pressure. |
| Boiling Point of Product Mixture | 43° C. − 45° C. | 44° C. (Example I). 42° C. − 46° C. (Claim 2). |

Appellants have not challenged the statement of utility in the parent. Thus the only consideration left is whether the two isomers of perfluoro-dimethylcyclobutane have been disclosed.

The nub of the problem in the case before us appears to be that the appellees did not analytically identify or separate any of the isomers before filing their parent application. During the prosecution of their parent application, appellees' attorney stated in an amendment dated April 4, 1958, that the various isomers could not be separated. Appellants' later application and appellees' patent clearly indicate that the separation can be made. The attorney's statement is, however, indicative that the separa-

tion had not been made when the parent was filed.

Appellants maintain that appellees are not entitled to the benefit of their parent case because it fails to unequivocally identify the claimed chemical structure. It is contended that the parent case describes the product only in terms of "multiple alternative possibilities," with no indication whether a single isomer or mixture of isomers is formed and that such a description is an insufficient one on which to base priority.

Appellees' parent application is brief and contains only two references to the composition of the product they obtained. In describing the reaction, the parent states:

"The perfluorinated olefins employed in the present invention, when heated to the temperatures stated hereinabove, react with each other through the opening of the double bond to form saturated compounds containing a perfluorinated four carbon atom ring. The reactions of the present invention may be illustrated by the following equation which shows the two isomers that can be formed.

$$2CF_2 = CF - C_nF_{2n}{}^+{}_1 \quad \rightarrow C_nF_{2n}{}^+{}_1 - \underset{|}{CF} - \underset{|}{CF_2} \quad + \quad \underset{|}{CF_2} - \underset{|}{CF} - C_nF_{2n}{}^+{}_1$$
$$CF_2 - CF - C_nF_{2n}{}^+{}_1 \qquad CF_2 - CF - C_nF_{2n}{}^+{}_1 \text{"}$$

---

The words "can be formed" are viewed by appellees as meaning that both isomers are formed whereas appellants view them as only indicating a possibility.

In example I of the parent, 100 g. of perfluoropropylene was reacted at 400° C. for 18 hours. Regarding the product, the parent states:

"Analysis of the structure by elemental carbon and fluorine analysis, molecular weight, Raaman spectrum, and nuclear magnetic resonance was consistent with the following structures:

$$CF_3 - \underset{|}{CF} \ - \underset{|}{CF_2} \qquad , \qquad CF_2 - \underset{|}{CF} - CF_3$$
$$CF_2 - CF - CF_3 \qquad CF_2 - \underset{|}{CF} - CF_3 \text{"}$$

---

This is not, according to appellants, a statement that the product was in fact a mixture. Appellees contend:

"The italicized passage goes on to state that analysis *inter alia* by Raaman spectrum and nuclear mag-

netic resonance was consistent with the following structures and shows structural formulae for the 1,3 and 1,2 compounds separated by a comma. These two analytical techniques are each well known to be capable

of distinguishing between isomeric forms, the spectra of forms in a mixture being an additive; and, therefore, a skilled chemist would understand that this analytical evidence showed the product to be a mixture."

It is noted, in passing, that this contention appears to be at odds with the statement of appellees' attorney appearing in his amendment.

Both the examiner and the board felt that the McCane et al. parent adequately described the isomers formed. With regard to the portion of Example I quoted above, the board said:

"The comma separating the structures would normally denote 'and,' not 'or.'

"These are, of course, the formulas deducible from the general equation. The tests therefore appear to have served what would be their normal function, determination as to whether or not the products of the example are in accord with what would be expected from the general scheme set forth on page 1. Finding that the two isomers are, within the limitations of the tests, those contemplated is a verification of the original concept. (McCane et al. states that nuclear magnetic resonance can be employed to distinguish isomers but admit that no separation thereof is disclosed in this application). Such verification has no necessary relationship to procedures for separating the isomers or testing them individually. Nothing in this application, including the statement of utility as solvents and lubricants in the final paragraph, requires or contemplates separation of the isomers."

■ We agree with the board's interpretation of the parent. The equation showing the formation of "two isomers that can be formed" would, we think, suggest to one skilled in the art that the reaction produces two isomers. The words "can be" appear to represent more than a mere possibility as appellants contend. The additional fact that analysis of Example I was conducted to take into account both isomers also would indicate that both isomers are formed. Appellees have set forth the structural formulae of the isomers; they have described how to make them, how to use them and how to analyze for them. It is not clear what more appellants would have them do.

■ Underlying appellants' argument appears to be the contention that one cannot disclose a compound if he has not actually isolated it and identified it. Such steps may be necessary in some cases. However, even for an actual reduction to practice, a chemical compound may be sufficiently identified by a partial analysis of the compound when considered with other factors, Farrington v. Mikeska, 155 F.2d 412, 33 CCPA 1073. In the present case a partial analysis was apparently sufficient to determine the composition of appellees' reaction product. We find nothing in the record or in the appellants' brief to suggest that McCane et al. had any question as to the composition of their dimer product.

■ Appellants, in a secondary argument, maintain that even if appellees disclosed the individual dimers, they must also show how to isolate them. It is true that appellees did not describe the separation of the isomers. The board, however, stated:

"Separation and identification of the individual isomers, if desired, are operations within the skill of the art not essential to the disclosed uses and need not be set forth in the McCane et al. disclosure to render it a constructive reduction to practice."

We find no error in this determination, especially in view of the fact that the Hauptschein et al. patent indicates that the isomers can be separated by "conventional distillation techniques."

We have reviewed the record in the light of appellants' contentions, but we find no reversible error in the decision of the board.

The decision of the board is affirmed.

Affirmed.