47 CCPA

**In re Corwin Nathan SPENCER and William Henry Myers.**

**Patent Appeal No. 6460.**

United States Court of Customs and Patent Appeals.

Dec. 21, 1959.

Robert P. Whipple and Stanley M. Clark, Akron, Ohio, for appellants.

Clarence W. Moore, Washington, D. C. (D. Kreider, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN and SMITH, and JOHNSON, retired, Judges.

MARTIN, Judge.

This appeal is from a decision of the Board of Appeals affirming the final rejection of claim 10 of Application Serial No. 579,786, filed April 23, 1956, entitled "White Sidewall Tire."

Claim 10 was copied from United States Patent No. 2,789,616 entitled "Method of Forming Sidewall of Tire" issued on April 23, 1957 to Cuthbertson, Erickson, and Fontana, and corresponds

to claim 4 of that patent. It was rejected as being drawn to new matter and as not reading on appellants' disclosure.

The disputed claim reads as follows:

"Claim 10. A method of forming the sidewall of a tire from a relatively dark colored rubber stock and a lighter colored rubber stock and forming the externally visible line of juncture between the two stocks comprising, lapping a marginal portion of the dark stock over the lighter stock during fabrication of the tire, the said stocks being in an unvulcanized condition, forming during subsequent molding and vulcanization of the tire an annular groove depressed into the overlapped marginal portion of the stock, and after vulcanization removing any of the overlapped dark stock from the exterior surface of the tire adjacent the groove to expose the lighter stock whereby the externally visible line of juncture between the two stocks is formed substantially at the edge of the groove."

The principal object of the inventions of both the patentees and the appellants is to provide a more suitable and desirable method for obtaining a uniform, even and regular line of demarcation between the white and black portions of whitewall tires.

In the modification of their invention upon which appellants rely to support the appealed claim, a whitewall tire is built on a tire building drum in a conventional manner. The assembled tire unit includes a heavy white rib portion and a thin flat black veneer portion which overlaps in part the white rib. After removal from the building drum, the tire is bagged and shaped in the usual way. Next it is placed in a mold where it is heated to the vulcanization temperature. The pressure which is exerted against the interior surface of the tire assembly serves to hold the tire against the mold until vulcanization is completed. Under these conditions the rubber stocks flow. The mold has an annular projection which is positioned so that the black stock will flow and pinch the white stock at one side of the rib to form a thin lip. An annular groove is formed adjacent where the black and white stocks have been pinched together. Following removal of the vulcanized tire from the mold, buffing at the line of juncture of the black and white stocks will expose the desired even line between them.

In the method disclosed by the patentees, black stock is lapped over white on a tire building drum. Thereafter the tire assembly is shaped in a conventional manner. It is then heated in a mold having an annular projection. By virtue of the softness of the rubber upon heating, and the pressure interior of the tire forcing it against the inner mold surface and projection thereon, an annular groove is formed in the marginal portion of the overlapped stock. Again, buffing will expose a clear and even line of demarcation between the black and white stocks.

The Board of Appeals was of the opinion that the application does not disclose the step of "forming during subsequent molding and vulcanization of the tire an annular groove depressed into the overlapped marginal portion of the stock." (Emphasis ours.) Specifically the board said, "appellants do not form an annular groove 'depressed into' the stock as is disclosed and claimed in Cuthbertson et al." Since the only issue raised is whether the application shows the "forming" step, we shall limit our discussion accordingly.

A most pertinent section of the application states:

"In the operation of the invention, a white sidewall tire is built up on a tire building drum in a conventional manner to provide a heavy rib black portion positioned adjoining a thin flat white portion which has a thin veneer overlapping in part the black rib. The tire is removed from the tire building drum, bagged and shaped in a manner familiar to those skilled in the art of tire manufacture. The tire is next positioned in

a mold with the veneer-covered black rib against the groove of the present invention and *pressure applied* internal the tire. This pressure forces the black rib portion of the unvulcanized tire into the adjacent rib contoured portion of the mold so that the black stock covered by a white veneer flows into the groove and is *pinched* to a thin, tapered, circular flange." (Emphasis ours.)

That portion relates to the principal embodiment of the application. As respects the embodiment which it is asserted supports the disputed claim, the application states:

"When it is desired that the rib 6 of the white sidewall tire be white, the groove of the invention is placed adjacent the upper edge of the rib contour defining mold as shown in Figure 4 and is so positioned that the black sidewall stock 51 will flow therein pinching the white stock 52 to a thin lip. When the tire is removed from the mold and the black veneer is buffed from the rib 53 to reveal the white tip, a symmetrical line of demarcation results."

The description makes it clear that when the black veneer was initially positioned against the white rib in the building stage it was thin and *flat*. It is also certain that Figure 4 in addition to the written disclosure shows that after molding the veneer is no longer of uniform thickness, but that it diminishes in thickness as it approaches the edge of the rib, at which point it, as well as the white rib, is pinched to a thin lip.

We are informed by the application that the tire is positioned in the mold with the veneer covered rib against the groove of the mold. The annular projection on the mold is one of the sides of the mold groove, consequently it also must be positioned against the veneer. When pressure is applied internally of the tire, the outer surface of the tire, including the veneer covered rib, is forced against the mold's inner wall. At this time the mold projection will press against and into the veneer, which means that at least

part of the veneer during its "pinching" to a thin lip is displaced by the pressure exerted against it by the mold protuberance.

The Cuthbertson et al. patent, from which the claim is copied, states:

"The recess [groove] 13 is depressed into the plane of the lighter stock.

\*   \*   \*   \*   \*   \*

"The recess [groove] 13 is formed in the overlapped thin section of the dark stock so that the externally visible line of juncture between the dark stock 10 and the lighter stock 11 appears as an irregular line 19 on the side of the tire adjacent the edge 12 of the recess or groove 13 when the tire is removed from the mold 18 \* \* \* the recess or groove 13 is formed by a rib 21 on the inner surface of the mold 18.

\*   \*   \*   \*   \*   \*

" \* \* \* [the] layer of stock in the groove 13 is quite thin being necessarily thinned out by the *flow* thereof during the forming of the groove 13." (Emphasis ours.)

The mold being stationary in both the patent and application, it is clear that the tire grooves are formed in part by forcing the rubber stock of the tires against the annular groove forming projections.

Although the board accepted the examiner's view that the groove in appellants' tire was produced by the mere flowing of the rubber around the mold projection, neither explained why the pressure exerted against the tire interior failed to force the mold projection into the veneer covering the rib. It is inconceivable to us just how the groove in the tire could be formed without the pressure against the tire causing the projection to protrude into the stock thereby producing the depression.

Obviously the rubber does flow and is displaced as the softened rubber is forced against the projection, otherwise no molded depression would be formed in the vulcanized rubber. This also occurs in the patented process wherein patentees

state that the overlapped stock in the groove becomes thin due to the "flow" thereof during the groove formation.

This court in the case of Hansgirg v. Kemmer, 102 F.2d 212, 214, 26 CCPA 937, stated, in discussing a situation similar to that present here:

"Where one copies a claim from an inadvertently issued patent it should clearly appear that his application disclosed the invention either expressly or inherently. See McKee v. Noonan, 86 F.2d 986, 24 C.C.P.A., Patents, 784; Lindley v. Shepherd, 58 App.D.C. 31, 24 F.2d 606. He may disclose the invention by drawings, by the use of language, or he may disclose it by reciting and teaching such subject matter as will inherently do the thing or possess the quality which is claimed for it. So it is not enough to say that Kemmer said nothing about dust removal or about a screen which would remove it if the process defined by Kemmer would inherently perform the function in the manner prescribed by the count. Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing *may* result from a given set of *circumstances* is not sufficient. See Parker v. Ballantine, 101 F.2d 220, 26 C.C.P.A., Patents, 799 (Patent Appeal No. 4026, decided January 23, 1939); In re Ball, 81 F.2d 242, 23 C.C.P.A., Patents, 830; Brand v. Thomas, 96 F.2d 301, 25 C.C.P.A., Patents, 1053. If, however, the disclosure is sufficient to show that the natural result flowing from the operation as taught would result in the performance of the questioned function, it seems to be well settled that the disclosure should be regarded as sufficient."

The answer to the question in the case at bar is that the disclosures of the application and the patent show the same inherent mechanism for forming the groove. Both utilize mold projections against which rubber stock is forced and both take advantage of the softness of the rubber at the mold temperatures used to form grooves corresponding to the mold projections. The "necessary and only reasonable" view which we can take of the "forming" step is that it is inherently met by appellants' specification. Binstead v. Littmann, 242 F.2d 766, 770, 44 CCPA 839. We therefore hold that claim 10 is supported by appellants' disclosure and that it is not drawn to new matter. The decision of the Board of Appeals is reversed as to claim 10.

Reversed.