51 CCPA

Charles **B. SWAIN** and Albert G. Schuessler, Appellants,

v.

Bob C. **CRITTENDON**, Appellee.

Patent Appeal No. 7131.

United States Court of Customs and Patent Appeals.

June 11, 1964.

Roy G. Story, Edward T. McCabe, Chicago, Ill., for appellants.

Ellsworth H. Mosher, Washington, D. C. (Sidney A. Johnson, Dallas, Tex., of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

SMITH, Judge.

This appeal by Swain et al. from an award of priority to Crittendon raises the single issue of whether Crittendon is entitled under 35 U.S.C. § 120 to rely upon the filing date of a parent application as establishing priority of inven-

tion. Resolution of this issue requires 1) a determination of whether the parent application contains in fact a disclosure of the subject matter of the counts, and 2) if so, a further determination of whether such disclosure is legally sufficient to support an award of priority.

Some historical background is required in order to understand the issue and how it arises here. Appellants' patent,[1] from which the present counts were copied, matured from an application[2] filed in the Patent Office on October 18, 1954. Appellee's application,[3] which is presently involved in this interference, was filed on September 8, 1958 as a continuation-in-part of an earlier filed application, the Crittendon parent,[4] filed April 8, 1954.

Upon declaration of the interference, appellants were made senior party on the basis of their October 1954 filing date. Appellee moved to shift the burden of proof on the ground that he was entitled to the April 1954 filing date of the Crittendon parent application under section 120. The examiner denied appellee's motion to shift, holding that the counts were not properly supported by the disclosure of the Crittendon parent application.

On appeal, the Board of Patent Interferences overruled the examiner on the question of whether there was proper support in the Crittendon parent application, and held that the motion to shift the burden of proof should have been granted. Since appellants took no testimony, but elected to rely on their October 1954 filing date, the board awarded priority to appellee. On reconsideration, the board adhered to its decision without change.

The invention defined by the counts relates to water-in-oil emulsions having application in well drilling, and to methods of drilling oil bearing formations using said emulsions as the drilling fluid. The drilling fluid contains solid particles dispersed or suspended therein and polyvalent metal salts of sulfated sperm oil as the emulsifying agent. The counts relate to a well drilling and completion fluid (counts 1 and 2) and to a method of drilling wells using such fluid (counts 3–6). The broadest counts of the two groups are counts 1 and 3, which read as follows:

"1. A fluid having application as a well drilling and completion fluid comprising a water-in-petroleum oil emulsion, solid particles dispersed in said fluid, and an emulsifying agent comprising *a polyvalent metal salt of sulfated sperm oil.*" [Emphasis added.]

"3. A method of drilling oil-producing formations with a rotary bit comprising circulation of a drilling fluid to said bit and then to the well surface, said drilling fluid comprising a water-in-oil emulsion with finely divided solids suspended therein and an emulsifier comprising a *sulfated sperm oil salt of a bivalent metal.*" [Emphasis added.]

The controversy here has its origin in the language we have emphasized in the above counts.

The disclosure in the Crittendon parent application, insofar as the emulsifier utilized in the drilling fluid is concerned, is broad and comprehensive. However, the four examples of the parent application each specify the use of a "sodium salt of *sulfonated* sperm oil." [Emphasis added.] As pointed out by the board:

"* * * The point of controversy has arisen because 'sulfonated' rather than 'sulfated' sperm oil is described in the parent case. The difference resides in the fact that in a sulfonate (in strict chemical parlance) the sulfur atom of the sul-

1. No. 2,793,188, issued May 21, 1957, entitled "External Oil Phase Drilling Fluid Emulsions."

2. Serial No. 463,036.

3. Serial No. 759,433, for "Emulsion Drilling Fluid."

4. Serial No. 421,953, for "Emulsion Drilling Fluid."

fonic acid group (SO₃H) is bonded directly to a carbon atom whereas in the case of the sulfated oils the sulfur atom is linked to carbon through an oxygen atom. The compounds are different, the former being a sulfonic acid (or salt) and the sulfate being an ester, either whole or half, or a salt thereof."

■ Thus it is appellants' position, rejected by the board, that the Crittendon parent application in disclosing "sulfonated sperm oil" will not support an award of priority of a count which calls for "sulfated sperm oil." We do not agree.

The emulsifier is described generically in the parent application as "a sulfuric acid derivative of an aliphatic ester." The parent specification further states that "By sulfuric acid derivative is meant the product obtained by reaction between any aliphatic ester and a sulfonating or sulfating agent."

The examiner and the board seemed to agree that the sulfuric acid derivative resulting from reacting sulfuric acid with sperm oil is a sulfate addition product and would be so regarded by persons skilled in this art. As the examiner commented:

"* * * it is well known in the art that the products formed by the 'sulfonation' reaction of sulfuric acid and unsaturated vegetable oils (i. e. sperm oil) are not true *sulfonates* but rather sulfate addition products even though such products are variously termed 'sulfonated' oil."

And, in referring to the above statement of the examiner, the board said:

"The term 'sulfonated' is often loosely used to refer to a sulfated oil. See, for example, paper No. 10 in the parent case, which includes a reproduction of a brochure by Swift and Co., (the senior party's assignee) wherein the term 'sulfonated' is applied to sulfated sperm oil. See also Organic Chemistry (Fieser and

Fieser, 3 Ed., p. 412) where at the middle of the page it is stated:

"The first synthetic compounds to compete with soap * * * *are* *sulfonated* (*actually sulfated*) oils made by treating unsaturated oils * * * with concentrated sulfuric acid. (our emphasis)

As appears in this standard work (also at the middle of the same page) 'sulfonated castor oil,' otherwise known as Turkey-red oil, is actually sulfated and not sulfonated. The Condensed Chemical Dictionary (5th Ed., published by Reinhold Pub. Corp.) under 'sulfonated oils' at page 1047 states with reference to animal or vegetable oils which have been treated with sulfuric acid:

"Chemically this trade term, sulfonated, is incorrect since the oils are sulfated (contain the $-OSO_2OH$ group) and not the $-SO_2OH$ group)."

We think, therefore, that the Board of Patent Interferences was correct in stating:

"Accordingly, we are satisfied without doubt that sulfated sperm oil is supported in the parent disclosure. Swain et al. have presented nothing convincing to the contrary to overcome the prima facie effect of the Primary Examiner's ruling reproduced above. See Henning v. Hunt, 1955 C.D. 376 (390), 42 CCPA 1064 [223 F.2d 926], 106 USPQ 307. * * *"

The further question remains as to whether such disclosure is legally sufficient to support an award of priority.

■ It is appellants' position that the Crittendon parent application fails to support the counts in that it disclosed and claimed not only a salt of a sulfonated (sulfated) sperm oil, but also a salt of a sulfonated aromatic hydrocarbon in admixture therewith. While this is true, the six counts involved herein are broad counts which do not exclude the presence of other ingredients in the com-

position. The broad "comprising" and "containing" terminology of the counts originated with appellants who, for purposes of the present interference, would now have the counts construed narrowly as though they had used the conventional narrow "consisting of" terminology.

Claims in the Crittendon parent application were rejected and the application was abandoned by a letter of abandonment dated January 23, 1963 without, however, abandoning the invention, which was transferred to the then copending continuation-in-part application here in issue. This abandonment occurred after declaration and during the pendency of the present interference. Appellants urge this abandonment apparently to establish that the parent application did not meet the requirements of 35 U.S.C. § 112. In appellants' brief the position is thus stated:

"The question as to whether the invention is adequately disclosed in the Crittendon parent application, as has been noted previously, was first raised while this application was before the Board of Appeals. All of the claims in the application had been finally rejected by the primary examiner as based upon an insufficient disclosure. In addition, there was a rejection based upon new matter and still another rejection based upon undue breadth in the appealed claims.

"On April 30, 1957, the Board of Appeals notified Crittendon that the hearing on appeal would be held on September 25, 1958. On April 9, 1958, Crittendon requested remand of the application from the Board of Appeals and also submitted an amendment under Rule 204 copying Claims 1, 6, 9, 11, 12 and 13 of the Swain et al. patent 2,793,188 into the Crittendon application. The primary examiner refused entry of the amendment on the ground that there is no basis in the disclosure of the parent Crittendon application for the claims copied from the patent. The examiner held that the broadest recitation of the invention included an admixture of a salt of sulfonated aromatic hydrocarbon and an emulsifying agent (which may be a salt of sulfonated sperm oil). This refusal to enter the amendment and declare the interference was not appealed to the Board of Appeals but rather Crittendon elected to file a new application, designated a continuation-in-part application, on September 8, 1958. This application contained Claims 29–34 corresponding to Claims 1, 6, 9, 11, 12 and 13 of the Swain et al. patent. The examiner held (RP 37) that the interference could not be declared inasmuch as Crittendon could not rely upon the parent case since the disclosure therein was insufficient to support the claims and an affidavit under Rule 204 was required. When this affidavit was filed, the interference was declared.

\* \* \* \* \* \*

"It is appellant's contention that the primary examiner was correct and the Board of Patent Interferences was incorrect in their holdings with respect to the question whether the counts are supported in the parent Crittendon application. \* \* \* "

First, we point out that, where an applicant alleges that he is entitled to rely upon a previously filed application under section 120, the parent application must comply with the first paragraph of 35 U.S.C. § 112, which provides:

"The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."

Hence, we think the crucial question is whether one skilled in the art would, with

the disclosure of the Crittendon parent application at hand, be able to practice the invention defined by the counts.

■ We are not here concerned with whether the Crittendon parent application contained a disclosure sufficient to support the grant of a patent thereon. E. g., Loukomsky v. Gerlich, 264 F.2d 907, 46 CCPA 805. Its legal significance here is whether it discloses the subject matter of the *present* counts. We think that it does.

■ In Den Best v. Martin, 252 F. 2d 302, 45 CCPA 798, we pointed out, with citation of authorities, that the disclosure in an application of a single species or example falling within the terms of an interference count is sufficient to constitute a constructive reduction to practice of the count.

In reversing the board in Loukomsky v. Gerlich, supra, this court stated:

" * * * The error of the board resides in its having predicated its decision on the *priority* issue on whether Loukomsky was entitled to *claim* the process of the count. That question may very well have to be decided after the interference is over, but at this juncture the sole issue is whether Loukomsky is entitled to an award of priority which would deny the count to Gerlich. There is no dispute that Loukomsky has established the earlier date. Since we hold he is entitled to make the count for the purposes of this contest, he is entitled to the award of priority, which is to say, of course, that Gerlich is not entitled to a claim which reads on the prior disclosure of Loukomsky, whether or not Loukomsky is entitled to the same claim in a patent."

The examiner attempted to distinguish the Loukomsky case, we think incorrectly, stating:

" * * * the omitted component in each instance performed a function which was entirely distinct and independent from that of the component (or components) which was common to both parties and constituted the count of the interference. This is not the same situation as the present case wherein the essence of the invention in the 421,953 application is in the use of a mixture of emulsifiers and some sort of synergistic effect is apparently obtained as a result of this combination of emulsifiers."

We agree instead with the reasoning of the board:

"We believe that distinctness of function is not the proper test for determining whether the parent case discloses the invention of the counts and we find nothing in the cited cases which indicates that any such test was considered. It appears here that the Examiner's decision was predicated on what Crittendon is entitled to claim in the parent case, that is to say, on patentability. However, as clearly appears in the Loukomsky case, so far as the priority issue is concerned, this is a reversible error since priority must be determined on support in the parent case and is independent of patentability. It may well be that the counts would not be patentable in the parent case but this is not a proper question for decision by us and we express no opinion on the merits of the question."

Thus, appellants have the later record date as to constructive reduction to practice of the subject matter defined by the counts; appellee has shown that, on the basis of the fully supporting disclosures in his parent application, he was the prior inventor. It is possible, of course, that the Patent Office at some future time may decide, in an ex parte proceeding, that appellee is not entitled to these counts as claims in a patent. Such a question however, is not presently before us. We here decide only that *appellants* may *not* have such claims.

For the foregoing reasons, the decision of the Board of Patent Interferences is affirmed.

Affirmed.