**Application of Desmond Walter MOLINS.**
**Patent Appeal No. 7658.**

United States Court of Customs
and Patent Appeals.
Nov. 17, 1966.

Francis G. Cole, Washington, D. C., for appellant.

Joseph Schimmel, Washington D. C. (George C. Roeming, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

SMITH, Judge.

The single issue here is whether appellant's reissue application[1] contains sufficient disclosure to support rejected claim 4 which was copied from a patent to Korber[2] in order to provoke an interference. The Board of Appeals held it did not, hence this appeal.

Appellant's patent and reissue application disclose an improvement in a tobacco manipulating machine for controlling the density of a stream of tobacco on a conveyor belt. Tobacco particles are showered on a conveyor and formed into a "filler" which can be enclosed in a paper wrapper to form a continuous wrapped rod which may be cut into cigarette length.

According to appellant's specification, the production of a filler having substantially uniform density is a very difficult matter. The portion of the structure disclosed by appellant to control the density of the tobacco stream and which is relied on as supporting the appealed claim is shown in Fig. 2, herein reproduced.

Tobacco is carried by conveyor 5 towards conveyors 6 and 11. Appellant's stated object of the invention is to so manipulate the stream of tobacco particles as to achieve substantially uniform density. As disclosed by appellant, manipulation of the stream is effected by providing a speed difference between conveyor 5 and conveyors 6 and 11. According to the specification, conveyor 6

1. Ser. No. 269,224, filed March 29, 1963, for reissue of Patent No. 3,036,578, granted May 29, 1962.

2. No. 3,039,474, filed Nov. 23, 1959.

travels at a constant speed which may be three times the speed of conveyor 5. To the extent that conveyor 11 is involved in what appellant terms the "pull" on the tobacco, it would appear that its speed necessarily is related to the speed of conveyor 6. The speed of conveyor 5 is varied and regulated according to the density measurement of the tobacco stream taken by apparatus 7 and 8. Appellant's specification states:

> According to the result of the measurement, the speed of conveyor 5 is altered in any known way so that the tobacco during transfer is reduced or increased in amount per unit of time passing to the conveyor 6. A suction device 9 associated with conveyor 6 causes the latter to engage the tobacco with a somewhat positive grip as the conveyor band may be made fairly porous and in order that this does not result in pulling unwarranted amounts of tobacco from the conveyor 5, the latter is also provided with a suction device at 10. By suitably arranging the extent and power of the suction devices the transfer of tobacco takes place at a rate determined only by the difference in speeds of the two conveyors. The conveyor 6 travels at a constant speed which may be three times the speed of conveyor 5 and assuming that conveyor 6 is travelling at a constant speed the mass per unit length on conveyor 6 will be one third of that on conveyor 5. However, the speed of conveyor 5 will fluctuate according to the speed control exerted on conveyor 5 as a result of the action of the radiation gauge and the stream on conveyor 6 will be more uniform than that on conveyor 5.

> Above the conveyor 6 is another conveyor 11 provided with a suction device at 12. With this arrangement the pull on the tobacco is more precise and effective than with a single conveyor 6.

The relationship between the suction devices is further described in appellant's specification as follows:

> Means may be provided for exerting suction through the first conveyor near its delivery end so as to tend to hold tobacco thereto while the second conveyor is subjected in a similar manner to suction so as to pull tobacco away from the first conveyor whereby the transfer of tobacco is suitably controlled. An upper conveyor may be associated with the second conveyor and be similarly provided with suction devices so that the stream on the first conveyor is entirely and effectively transferred to the second conveyor.

The single claim on appeal[3] is as follows:

> 4. In combination with a cigarette rod making machine having first and second conveyor means arranged in end to end relation for feeding tobacco from a hopper along a horizontal pathway to a forming head with the cigarette paper strip fed upwardly through a gap between the first and second conveying means toward said forming head, of a pair of pulleys mounted above said horizontal pathway with one thereof arranged adjacent said forming head, [1] *an endless perforated belt arranged to travel over said pulleys with its lower run bridging said gap and spaced above the first and second conveyor means, and* [2] *a suction head mounted above the lower run of said endless belt for creating a suction in the area of said gap so that the tobacco particles will travel over the gap through which the paper strip is fed.* [Emphasis added.]

The board found "no ambiguity in the structure" set forth in the appealed claim and held there was no supporting disclosure in appellant's specification for the portions designated above as [1] and [2].

3. No appeal has been taken as to claim 3, its rejection being affirmed by the board. Claims 1 and 2 of appellant's patent stand allowed in the reissue application.

As to [1], the board stated:

\* \* \* The clear and broadest interpretation of the quote is that the belt has a lower free-running portion that completely bridges the gap. We do not find support for this structure in the instant disclosure \* \* \*.

\* \* \* the gap between the first and second conveyors is not bridged by the lower free-running portion of the belt 11. The gap is bridged by the pulley over which the belt 11 is trained and there is virtually no part of the free-running lower portion of the belt which overlies the gap, let alone a complete bridging of the same, as is required by the claim.

As to [2], the board stated:

We are of the opinion that this limitation in conjunction with the specifics of the endless perforated belt considered above sets forth a structure wherein the tobacco from the first conveyor is sucked into contact with the lower surface of the perforated belt, *then carried by the belt over the gap* (between the first and second conveyors), and thereafter deposited on the second conveyor. We do not find in the instant disclosure either the structural relationship or the mode of operation that is set forth or inherent in the structure of claim 4. \* \* \*

The board found that in the structure defined by the appealed claim the tobacco is *carried* by the belt utilizing suction while in appellant's device "the suction means is used to *pull* the tobacco across the gap." The board stated:

\* \* \* We consider as material the difference between the two modes of transferring the tobacco across the gap. Claim 4 recites structure not shown in the instant disclosure for carrying out a function in a manner that is not shown in this case.

\* \* \* the instant disclosure lacks the particular relationship of the belt and suction means to the gap, that is clearly set forth in the claim.

Appellant argues the board failed to give the broadest interpretation that the claim will reasonably support. It is argued that the board "has read into Claim 4 limitations derived from the Korber disclosure but absent from the claim language." Specifically, appellant argues the board has inserted the limitations that the lower run of the conveyor *completely* bridge the gap and that the tobacco travel by *carrying* over the gap.

This case arises under 35 U.S.C. § 251 which provides in pertinent part that appellant may claim "the invention disclosed in the original patent." Thus the issue is to be resolved by determining whether the invention defined by the appealed claim is disclosed in the patent. After considering the evidence and briefs before us, we find that the *result* reached by the board is correct and its decision must therefore be affirmed.

Where one copies a claim from an alleged inadvertently issued patent it should clearly appear that his application, either expressly or inherently, disclosed the invention. In re Spencer, 273 F.2d 181, 47 CCPA 751, and the burden of establishing this fact is upon the party asserting it.

We do not think appellant has discharged his burden of establishing the identity of the invention claimed in the appealed claim with the invention disclosed in his original patent. The disclosures in both the original patent and the reissue application establish that "manipulation" and "attenuation" of the tobacco stream is accomplished by the difference in speeds between the conveyors 5 and 6. "Transfer" of the tobacco stream from conveyor 5 to conveyor 6 is accomplished by suction devices, the device in conveyor 5 tending to hold tobacco thereto while the device in conveyor 6 tends to pull tobacco across the gap whereby, according to the application, "the transfer of tobacco is suitably controlled." Additionally, a second conveyor 11 and suction device may be "associated" with conveyor 6 so that

the stream is "entirely and effectively transferred." The application also states that when conveyor 11 is added, "With this arrangement the *pull* on the tobacco is *more* precise and effective than with a single conveyor." [Emphasis added.]

Thus the disclosure conveys the single impression that the suction devices in conveyors 5 and 6 cooperate to pull the tobacco across the gap while for more effective transfer, conveyor 11 and a suction device therein may be added.

The structure defined in the appealed claim requires that a suction device be mounted above the lower run of the upper conveyor which bridges the gap between the two lower conveyors. This arrangement creates "a suction in the area of said gap so that the tobacco particles will travel over the gap." We do not find in appellant's specification and drawings the disclosure of a structure which functions in the manner defined by the appealed claim. "Transfer" of the tobacco, in comparing the structure required by the claim with that disclosed in the specification and drawings, is accomplished in a different manner. We find no disclosure in the specification and drawings that appellant contemplated the transfer of the tobacco stream from one lower conveyor belt to the other by utilizing a suction device mounted above the lower run of the bridging conveyor for creating a suction in the area of the gap between the lower conveyors as is required by the claim.

For the above reasons, we find that the result reached by the board was correct and its decision is therefore affirmed.[4]

Affirmed.

MARTIN, J., participated in the hearing of this case but died before a decision was reached.

4. While the board found "no ambiguity in the structure" set forth in the appealed claim, appellant contends that it restorted to the Korber specification. Appellant concedes he does not disclose the invention set forth in Korber. Whether the Korber specification is resorted to or not, appellant's specification fails to disclose the invention defined by the claim and therefore we find no error in the result reached by the board.